IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STRUDEL HOLDINGS LLC and AVR AH LLC,<br><br>        Debtors. | Chapter 11<br><br>Case No. 23-90757 (CML)<br><br>(Jointly Administered) |
| FLEEGER FAMILY FIRST LP<br><br>        Appellant,<br><br>v.<br><br>NINETEEN77 CAPITAL SOLUTIONS A LP; BERMUDEZ MUTUARI, Ltd,<br><br>        Appellees. | Civil Action No. 24-cv-00356<br><br>Hon. Keith P. Ellison |

**APPELLANT FLEEGER FAMILY FIRST LP'S
SUPPLEMENT TO ITS RESPONSE TO APPELLEES' MOTION TO
DISMISS APPEAL AS STATUTORILY MOOT PURSUANT TO 11 U.S.C.
§ 363(m)**

Patrick L. Hughes
Texas Bar No. 10227300
Patrick.Hughes@HaynesBoone.com
Re'Necia Sherald
Texas Bar No. 24121543
ReNecia.Sherald@HaynesBoone.com
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 400
Houston, TX  77010
Telephone: (713) 547-2000

Barrett H. Reasoner
Texas Bar No. 16641980
BReasoner@gibbsbruns.com
Mark A. Giugliano
Texas Bar No. 24012702
MGiugliano@gibbsbruns.com
Conor McEvily
Texas Bar No. 24078970
cmcevily@gibbsbruns.com
Michael D. Doman
Texas Bar No. 24131182
mdoman@gibbsbruns.com
GIBBS & BRUNS LLP
1100 Louisiana St., Ste 5300
Houston, TX 77002
Telephone: (713) 650-8805

*Counsel for Appellant Fleeger Family First LP*

Appellant Fleeger Family First LP ("Appellant" or "Fleeger") submits this Supplement to its Response to Appellees Nineteen77 Capital Solutions A LP and Bermudez Mutuari, Ltd.'s ("Appellees" and with Chiron AVR LLC, the "Secured Parties") Motion to Dismiss Fleeger's Appeal as Statutorily Moot Pursuant to 11 U.S.C. § 363(m) ("Motion").

In the weeks since Fleeger filed its Response opposing Appellees' Motion to Dismiss (*see* Doc. No. 26), new evidence has surfaced that gives this Court another reason to deny it. In a recent submission filed in the same underlying bankruptcy case from which this appeal arises,[1] third-party Beyond The Beach, LLC ("BTB")—an LLC that owns two of the eleven parcels situated on the Aspen Valley Ranch ("Property")—has provided argument and tendered evidence indicating that the Secured Parties evaded their obligation to pay the Property's unpaid Homeowners Association ("HOA") dues in defiance of the terms of the Bankruptcy-Court-approved Purchase and Sale Agreement ("PSA"). If true, this would amount to "conduct-based" bad faith that would give this Court a separate, independent reason to deny the Secured Parties' claim that this appeal is moot under 11 U.S.C. § 363(m).

## BACKGROUND

This appeal's factual and procedural background is set forth in detail in Fleeger's Response to the Secured Parties' Motion to Dismiss. *See* Doc. No. 26 at 2–7. But to provide an overview:

In November 2023, the Bankruptcy Court entered a Sale Order directing the Secured Parties and Debtors to close the sale of the Property at issue "no later than November 22, 2023" ("Closing Date"). That Order decreed that if the Secured Parties failed to close by this date, the Debtors "shall" accept Fleeger's back-up bid "without further order from this court." In the hours before closing, the Secured Parties demanded that the Debtors pay $1.2 million to satisfy the Property's outstanding HOA fees comprising a lien or charge on the Property. The Debtors refused, and the parties reached

---

[1] *In re Strudel Holdings LLC and AVR AH LLC*, No. 23-90757 (CML) (S.D. Tex. Bankr.), Doc. No. 454.

1

an impasse and failed to close on the Property sale by the Sale Order's deadline. The Secured Parties have since argued that a data breach made meeting the Closing Date impossible, even though the evidence shows the closing would not have occurred because of the dispute over HOA dues and other closing costs. Indeed, in Bankruptcy Court filings, the Secured Parties have conceded that, independent of the data breach, "the delay [in closing] was the result of Debtors' defaults" in not paying the HOA fees.[2]

Because the Closing Date came and went without an actual closing, Fleeger's right to buy the Property vested **automatically** per the Sale Order's terms. But the Secured Parties ignored Fleeger's vested rights, continued their unlawful efforts to close on the Property, and eventually, **after the Sale Order became final,** asked the Bankruptcy Court to extend the Closing Date, citing the need for emergency relief under Federal Rule 60(b) and § 105 of the Bankruptcy Code. The Bankruptcy Court granted the requested extension, then vacated it and held an evidentiary hearing to consider Fleeger's arguments and evidence that it possessed a vested right to purchase the Property per the Sale Order. After that hearing, the Bankruptcy Court issued an order on January 29, 2024 ("Modification Order") that extended the Sale Order's Closing Date and stripped Fleeger of its vested rights.

The next day Fleeger initiated this appeal and moved to stay the sale. As Fleeger will show the Court, because its right to buy the Property vested once the Closing Date passed, the Secured Parties were foreclosed from obtaining their requested relief under either Rule 60(b) or § 105.

The day after Fleeger perfected its appeal, while its Motion to Stay Pending Appeal was pending before the Bankruptcy Court, a "Notice of Closing of Sale" was filed claiming that Property sale to the Secured Parties had closed under the Sale Order and the Modification Order. This notice was unaccompanied by any evidence that the sale had fully and finally closed. The Bankruptcy Court

---

[2] *See* Doc. No. 26 at 6 & n. 25.

then denied Fleeger's motion to stay, citing to the represented closing. Based on this represented closing, Fleeger discontinued its planned effort to seek a stay pending appeal from this Court, and informed this Court that the stay hearing this Court had scheduled was unnecessary. The Secured Parties later moved to dismiss Fleeger's appeal as statutorily moot under § 363(m). *See* Doc. No. 25 (Feb. 16, 2024). But as Fleeger explained in its Response, the Secured Parties had not obtained an applicable "good faith finding" below, which is required to invoke § 363(m)'s safe harbor. *See* Doc. 26 (Feb. 23, 2024) at 8–18. Additionally, binding Fifth Circuit caselaw holds that to avail themselves of § 363(m)'s protections, good-faith purchasers must meet *both* the "conduct-based" and the "notice-based" definitions of "good faith." So even if the Secured Parties *had* shown below that they met the "conduct-based" definition (they did not), they would still be barred from invoking § 363(m) because, by closing with "notice of [Fleeger's] adverse claims," they failed the notice-based good-faith definition.

Since filing its Response, Fleeger has learned of BTB's new evidence and allegations that, if true, would show that the Secured Parties also cannot satisfy the conduct-based good-faith definition. Fleeger respectfully submits this Supplement to its Response to bring to the Court's attention this new information.

## ARGUMENT

**I.  New Evidence and Allegations Have Emerged That Justify Supplementing Fleeger's Response.**

**A. In the bankruptcy proceedings below, BTB has supplied evidence that the Secured Parties colluded to lower the Property's court-approved purchase, price thereby evading their obligation to pay the HOA dues.**

On April 17, 2024, BTB filed a "*Motion for Entry of an Order Enforcing the Sale Order*." Exhibit A, attached hereto (Bankr. Doc. No. 454). By way of background, the Property at issue (owned by the Debtors) consists of a few houses and undeveloped lots on a larger piece of property called Aspen Valley Ranch. BTB owns another part of Aspen Valley Ranch. As a result, BTB cares

3

about Aspen Valley Ranch's HOA—it pays dues and receives benefits.

In its motion, BTB attached the Secured Parties' and Debtors' "Second Amendment to Agreement for Purchase and Sale of Real Property." Exhibit A at 19. This Amendment reveals that the Secured Parties and Debtors actually lowered the purchase price approved by the Court's November 9, 2023 Sale Order and the attached Sale Agreement from $30.5 million to just over $29 million to credit the unpaid HOA fees. *Id.* at 20 ¶ 1. Yet the Amendment provided that the Seller (the Debtors) would pay those fees "as a condition of Closing"—not the Buyer receiving the credit. *Id.* at 22 ¶ 11. In effect, the Buyer (Secured Parties) paid $1.5 million less than their bid for the Property *and* received the Property unburdened by the HOA debt.

BTB alleges that the "Second Amendment was not presented to the Court, approval was not sought by either the Debtors or the Secured Parties/Buyer and was not filed of record concurrent with or following the Closing of the transaction contemplated by the Second Amendment." *Id.* at 9 ¶ 23. Because the Amendment "significantly changed the monetary terms of the Agreement, without Court approval, and to the detriment of the Debtors, creditors, and other interested parties," BTB asserts that the amendment violates the Court's Sale Order and the original Sale Agreement. *Id.* at 12 ¶¶ 17–22, 28. Finally, after quoting from several correspondences, BTB claims that "It is obvious from the correspondence that the Debtors, the Secured Parties/Buyer, and the [affiliated] Parties, have no intention to pay the HOA what was owed as of the Closing, **despite affirmative assurances to the Court and other parties that such amounts would be paid**." *Id.* at 11 ¶ 27 (emphasis added).

### B. This recently revealed evidence warrants supplementing Fleeger's Response because it is new and impacts Fleeger's rights to the property.

The bankruptcy rules do not address whether a party may supplement a response to a motion to dismiss when new facts emerge after the filing. *See generally* Federal Rule of Bankruptcy Procedure 8013. But a district court has "broad discretion and inherent authority to manage its docket." *In re Deepwater Horizon*, 988 F.3d 192, 197 (5th Cir. 2021) (quotation omitted). This is

4

particularly the case where, as here, this Article III Court has overarching jurisdiction over the referral of reference that occurs automatically with respect to bankruptcy matters to the Article I courts. Pursuant to this docket-management power, courts "have consistently allowed parties to refile or amend motions and supporting documents as a valid exercise of their discretion in case management." *United States v. Filson*, 347 Fed. Appx. 987, 991 (5th Cir. 2009). New circumstances are a common reason for courts to order or accept supplemental briefing. *See, e.g., Gonzalez Bank of Am., N.A. v. Wells Fargo Bank, N.A.*, No. CV H-13-1028, 2014 WL 12616132, at *2 (S.D. Tex. Aug. 5, 2014) (new law); *Coleman v. United States*, No. SA:16-CV-817-DAE, 2019 WL 13437304, at *1 (W.D. Tex. May 16, 2019), aff'd, 799 Fed. Appx. 227 (5th Cir. 2020) (remand on appeal); *Wei-Ping Zeng v. Tex. Tech Univ. Health Scis. Ctr. at El Paso*, No. EP-19-CV-99-KC, 2019 WL 4359436, at *2 (W.D. Tex. Sept. 12, 2019) ("evolving nature" of briefing).

Supplementation is appropriate here. When Fleeger filed its response to the Secured Parties' Motion to Dismiss, it lacked access to the Secured Parties' and Debtors amended purchase agreement. Fleeger only learned about the alterations to the Purchase Agreement well after the fact, through BTB's filings, and now substantial questions surround the rushed closing, which was quickly used by the Secured Parties to attempt to strip Fleeger of its vested property rights. As discussed below, this new evidence and these new allegations, if true, materially impact Fleeger's opposition to the Secured Parties' Motion to Dismiss. What's more, supplementation is "especially appropriate if the adverse parties will not be prejudiced by the amendment to the motion, or if the amendment is necessary to ensure that the case is adjudicated fairly and justly." Wright & Miller, Fed. Prac. & Proc. Civ. § 1194 (4th ed.). Both are true here. The Secured Parties are not prejudiced by Fleeger alerting this Court to the Secured Parties' acts as set out in BTB's filing. And doing so allows the court to more fairly and justly decide whether the Secured Parties have met their burden to show a good faith purchase that qualifies for the protections of § 363(m), as discussed below.

For these reasons, Fleeger respectfully requests that the Court accept this Supplement to its earlier Response to the Secured Parties' Motion to Dismiss.

## II. If True, These New Facts and Allegations Further Show a Lack of Good Faith by the Secured Parties.

If BTB's allegations are true, then the Secured Parties do not qualify as good faith purchasers for purposes of § 363(m) for an additional and different reason than what Fleeger argued in its Response. In short, BTB alleges that the Secured Parties and Debtors have defied the Bankruptcy Court's Sale Order by managing to both (1) transfer the property for $1.5 million *less* than the Secured Parties' bid at auction; and (2) skirt any obligation to pay the HOA debts. *See generally* Exhibit A. Such actions meet the "conduct-based" definition of bad faith this Circuit uses to evaluate § 363(m) purchases. Thus the Secured Parties cannot rely on § 363(m) to moot this appeal.

To qualify for § 363(m) mootness, the Secured Parties must have "purchased or leased such property in good faith." 11 U.S.C. § 363(m). Although the Bankruptcy Code does not define "good faith," the Fifth Circuit has explained that a purchaser must meet two definitions: (1) notice-based good faith, meaning the purchaser buys "without notice of adverse claims" and (2) conduct-based good faith, meaning "one who does not engage in misconduct including, *inter alia*, fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders." *Matter of RE Palm Springs II, LLC*, 65 F.4th 752, 759 (5th Cir. 2023), *cert. denied sub nom. SR Constr., Inc. v. RE Palm Springs II, LLC*, 144 S. Ct. 327 (2023) (quotation omitted). Fleeger's original response to the Secured Parties' motion to dismiss explains why they do not meet the "notice-based" definition. Doc. 26 at 13–18.

But BTB's allegations, if true, reveal that the Secured Parties also cannot qualify under the "conduct-based definition" because of their misconduct. As described by BTB, the Secured Parties have defied the Bankruptcy Court's Sale Order, inappropriately amended the Purchase Agreement, and ultimately secured the property for $1.5 million less than they bid. **This sales price is less than**

6

***Fleeger's final back-up bid of $30 million***.³ What's worse, the Secured Parties continued to represent to the Bankruptcy Court and all involved, according to BTB, that the HOA fees would be paid.⁴ Ultimately, the debts remain unpaid and the Debtors' creditors—including the HOA—were left holding the bag. This is clear "misconduct" under the "conduct-based definition." Indeed, these actions resemble the archetypical examples outlined in the standard—attempting to "take grossly unfair advantage of other bidders" and "collusion"—and jibe with other examples of conduct-based bad faith in the caselaw. *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014).

It does not matter that the Secured Parties' bad-faith actions happened *after* the Bankruptcy Court entered its Modification Order and Fleeger initiated this appeal. The good faith inquiry even extends to acts *after the purchase itself* if those acts "call into question the good faith of the buyer." *See, e.g.*, *In re Zuercher Tr. of 1999*, 2016 WL 721485, at *1 (B.A.P. 9th Cir. Feb. 22, 2016). Otherwise, purchasers would be free to engage in fraud, collusion, and other misconduct as soon as a court enters a sale order or an appeal is taken *and then* weaponize § 363(m) to evade oversight. Such a line of attack would write "good faith" out of the text of the statute and contravene the deliberate balance it strikes between finality and fairness.

## CONCLUSION

Appellant respectfully asks that the Court allow this supplemental submission and deny the Secured Parties' Motion to Dismiss.

---

³ *See* Bnkr. Doc. No. 245, Corrected Sales Order, at 6 ¶ O.

⁴ Doc. 26 ¶ 27.

Dated: May 3, 2024

By:   /s/ *Barrett H. Reasoner*
    **Barrett H. Reasoner**
    BReasoner@gibbsbruns.com
    State Bar No. 16641980
    Federal ID: 14922
    **Mark A. Giugliano**
    MGiugliano@gibbsbruns.com
    State Bar No. 24012702
    Federal ID: 29171
    **Conor McEvily**
    cmcevily@gibbsbruns.com
    State Bar No. 24078970
    Federal ID: 2166198
    **Michael D. Doman**
    mdoman@gibbsbruns.com
    State Bar No. 24131182
    Federal ID:  3867867
    1100 Louisiana St., Ste 5300
    Houston, TX 77002
    Telephone: (713) 650-8805
    Facsimile: (713) 750-0903

    - and -

    Patrick L. Hughes (TX Bar No. 10227300)
    Re'Necia Sherald (TX Bar No. 24121543)
    **HAYNES AND BOONE, LLP**
    1221 McKinney Street, Suite 400
    Houston, TX  77010
    Telephone: (713) 547-2000
    Email:  Patrick.Hughes@HaynesBoone.com
    ReNecia.Sherald@HaynesBoone.com

    ***Counsel for Appellant Fleeger Family First LP***

## CERTIFICATE OF SERVICE

I certify that on May 3, 2024 a true and correct copy of the foregoing Appellant Fleeger Family First LP's Supplement to Its Response to Appellees' Motion to Dismiss Appeal as Statutorily Moot Pursuant to 11 U.S.C. § 363(m) was served by this court's CM/ECF to all parties that are registered to receive such notice in the above-captioned case.

*/s/ Barrett H. Reasoner*
Barrett H. Reasoner

## CERTIFICATE OF COMPLIANCE

This Supplement complies with the word limitation in Bankruptcy Rule 8013(f)(3) because it contains 2,350 words (excluding the parts of the brief exempted by Bankruptcy Rule 8013(a)(2)(C), as counted using the word count of the word-processing system used to prepare the document), and the typeface and style requirements of Bankruptcy Rule 8015(a)(5) and (a)(6).

*/s/ Barrett H. Reasoner*
Barrett H. Reasoner