IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>STRUDEL HOLDINGS LLC and AVR AH LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 23-90757 (CML)<br><br>(Jointly Administered) |
| FLEEGER FAMILY FIRST LP<br><br>Appellant,<br><br>v.<br><br>NINETEEN77 CAPITAL SOLUTIONS A LP; BERMUDEZ MUTUARI, LTD,<br><br>Appellees. | Civil Action No. 24-cv-00356<br><br>Hon. Keith P. Ellison |

**APPELLEES' RESPONSE TO FLEEGER FAMILY FIRST LP'S SUPPLEMENTAL OPPOSITION TO APPELLEES' MOTION TO DISMISS APPEAL AS STATUTORILY MOOT <u>PURSUANT TO 11 U.S.C. § 363(m)</u>**

Richard A. Jacobsen (admitted *pro hac vice*)
Darrell S. Cafasso (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
(212) 506-5000
rjacobsen@orrick.com
dcafasso@orrick.com

*Counsel for Appellees*
*(Additional Counsel Listed On Signature Block)*

Appellees, the Secured Parties, hereby submit this response to *Appellant Fleeger Family First LP's Supplement to its Response to Appellees' Motion to Dismiss Appeal as Statutorily Moot Pursuant to 11 U.S.C. § 363(m)* (the "Supplement") [Dist. Doc. No. 33], and in further support of the Secured Parties' motion to dismiss (the "Motion")[1] [Dist. Doc. No. 25].

## INTRODUCTION

Realizing its appeal is dead on arrival under section 363(m)'s statutory mootness doctrine, the Fleeger Family filed an untimely and unauthorized Supplement that purports to introduce "new evidence" to establish "conduct-based" bad faith by the Secured Parties. The "new evidence" presented by the Fleeger Family consists of a pleading filed by Beyond the Beach ("BTB")[2] in the Bankruptcy Case wherein BTB complains that approximately $1.3 million in HOA fees has not been paid in connection with the sale of the Ranch between the Secured Parties and the Debtors. The Fleeger Family points to BTB's discussion of the Secured Parties and the Debtors' entry into a downward purchase price adjustment to account for the Debtors' failure to pay the HOA fees as somehow transforming the Secured Parties

---

[1] Unless otherwise defined herein, all defined terms shall have the meaning ascribed to them in the Motion.

[2] BTB owns a parcel of property that is part of the Aspen Valley Ranch. As a co-owner, BTB is responsible for some of the HOA fees.

into a bad faith purchaser. This argument makes no sense, is untimely and waived, and in all events comes nowhere close to establishing bad faith under section 363(m).

First, the payment of HOA fees has nothing to do with the Fleeger Family or this appeal. The Fleeger Family does not own any of the ranch properties and is not impacted by the payment of HOA fees. The Fleeger Family is not even a creditor of the Debtors' estate. Its sole interest is its purported rights as a backup bidder under the Sale Order, which were extinguished when the sale to the Secured Parties closed.

Second, the Fleeger Family has known about the unpaid HOA fees and the purchase price adjustment since at least November 30, 2023. In the two months that followed, which included discovery and an evidentiary hearing before the Bankruptcy Court, the Fleeger Family never argued that entering into a purchase price adjustment would or could constitute bad faith. The Fleeger Family only raises this issue now as a last-ditch attempt to save its appeal by conjuring up a new argument that the Secured Parties have acted in bad faith. But Fifth Circuit law firmly precludes the Fleeger Family from raising bad faith for the first time on appeal, much less in an unauthorized and untimely sur-reply.

Third, even if the Court were to consider these new arguments, the purchase price adjustment does not establish fraudulent or collusive behavior, as would be required to demonstrate bad faith. The Fleeger Family (and BTB) conveniently ignore that *the Debtors*, not the Secured Parties, were obligated to pay the HOA fees

under the Purchase Agreement. As the Debtors disclosed to the Bankruptcy Court on November 30, 2023, and multiple times thereafter, the Debtors had offered the Secured Parties a purchase price adjustment because the Debtors were unable to pay the outstanding HOA fees.[3] Thus, the purchase price adjustment was part of the negotiated resolution between the Debtors and Secured Parties that enabled the sale to close. Notably, just like the Secured Parties' Purchase Agreement, the Fleeger Family's Back-Up Bidder Agreement required the Debtors to pay the HOA fees. *See* Motion, Ex. 11 at 89.[4] In fact, the Back-Up Bidder Agreement also provided for a reduction to the purchase price if the Debtors failed to pay. *Id.* Having included this adjustment provision in its own agreement, it is of course absurd for the Fleeger Family to argue that a similar provision in the Secured Parties' agreement constitutes bad faith.

## BACKGROUND

The Motion sets forth the relevant factual and procedural background. To briefly summarize, the Secured Parties have been attempting to collect on their defaulted $120 million loans since 2020. A significant piece of collateral securing

---

[3] *See e.g.*, Motion, Ex. 24, November 30, 2023 Hearing Tr. at 7:23-8:2, 8:18-24, 9:16-20, 13:20-22, and 15:8-17; Motion, Ex. 25, January 3, 2024 Hearing Tr. at 49:8-19; Motion, Ex. 26, January 5, 2024 Hearing Tr. at 42:10-17; Motion, Ex. 16, January 22, 2024 Hearing Tr. at 118:2-18 and 145:21-146:14.

[4] This agreement is attached as Exhibit B to the Sale Order, and the relevant provision is § 8.3.

3

those loans was the Ranch owned by Debtor AVR. The Debtors filed for Chapter 11 to stop the Secured Parties' foreclosure efforts and to sell the Ranch under Section 363 of the Bankruptcy Code instead. In October 2023, the Secured Parties and the Fleeger Family attended a court-ordered auction, and the Debtors named the Secured Parties as the winning bidder after the Fleeger Family failed to top the Secured Parties' bid. Eventually, the Secured Parties and the Debtors entered into a Purchase Agreement, which contained a credit bid purchase price of $30.5 million. The Fleeger Family and the Debtors entered into the Backup Bidder Purchase Agreement. Importantly, *both* the Secured Parties' Purchase Agreement and the Fleeger Family's Backup Agreement required *the Debtors* to pay the HOA fees prior to closing. The Court then held a hearing and approved the sale, finding, among other things, that the Secured Parties had acted in good faith and were entitled to protection under section 363(m) of the Bankruptcy Code.

When an unforeseen cyberattack on Fidelity prevented the Secured Parties and the Debtors from closing by the Sale Order's deadline, they extended the deadline. Viewing this as an opportunity to seize the Ranch, the Fleeger Family objected, and the issue of whether the Sale Order could be modified was brought before the Bankruptcy Court. The Fleeger Family's primary argument was that the real reason for the delayed closing was the Debtors' failure to pay the HOA fees, not the cyberattack. After granting the Fleeger Family the opportunity to take discovery

and conduct an evidentiary hearing—a process that extended the closing by several weeks and added material administrative costs to the estate—the Bankruptcy Court issued a written opinion and order on January 29, 2024 modifying the Sale Order to extend the closing deadline through February 9, 2024. *In re Strudel Holdings LLC*, 656 B.R. 404, 411 (Bankr. S.D. Tex. 2024). The Court found that based on the "very credible" testimony from the Secured Parties and the Debtors' witnesses, the cyberattack was "a truly extraordinary circumstance" that made closing impossible. *Id.* at 410.

As they had been contemplating since November 2023, the Debtors and the Secured Parties entered into the Second Amendment contemporaneously with the closing to reach a resolution regarding the Debtors' inability to pay the HOA fees. These fees remained unpaid because the Debtors' (affiliated) DIP lender, Ajax Holdings LLC (the "DIP Lender") had refused to fund the payments, and the Debtors had no cash.

Since the closing, the DIP Lender has confirmed that it is unwilling to provide any additional funding to the Debtors. And, as this Court may be aware, on April 1, 2024, the Secured Parties won a judgment in the Bankruptcy Court against the Debtors following trial in a related adversary proceeding, which is subject to a separate appeal before this Court and a scheduled mediation before Judge Isgur. As a result of both the DIP Lender's refusing to fund and the Debtors' loss in the

adversary proceeding, there is no money in the estate to cover the unpaid HOA fees. This reality is what prompted BTB to file its motion to enforce the Sale Order. *See* Supplement, Ex. A. BTB wants *someone* to pay the HOA fees, so the HOA does not shift the costs to BTB.[5]

## ARGUMENT

### A. No New Evidence Has Emerged that Justifies the Fleeger Family Filing an Unauthorized Supplement to its Response.

The Federal Rules of Bankruptcy Procedure do not authorize a party to file a "supplement" or sur-reply. *See* Fed. R. Bankr. Pro. 8013(a)(3). Indeed, sur-replies are "heavily disfavored by courts." *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 Fed. Appx. 749, 751 n.2 (5th Cir. 2014). Further, a party must first seek leave of court before filing a sur-reply. *See Brackens v. Dallas Indep. Sch. Dist.*, 2010 WL 5464823, at *5 (N.D. Tex. Sep. 20, 2010); *see also Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 489 (5th Cir. 2010).

Yet, the Fleeger Family never sought leave with this Court to file its Supplement. The Fleeger Family attempts to justify its unauthorized pleading by suggesting (*see* Supplement at 5) that it was unaware of the purchase price adjustment in the Second Amendment until BTB's pleading, which attached an

---

[5] On April 18, 2024, the Bankruptcy Court denied BTB's motion because this appeal means that the Bankruptcy Court no longer has jurisdiction to enter any orders related to the Sale Order. *See* Bankr. Doc. No. 455.

6

executed version of the Second Amendment. But the Fleeger Family has known about the amendment and the contemplated purchase price adjustment since at least November 30, 2023, when the Secured Parties attached a Draft Second Amendment containing an earlier version of the purchase price adjustment to their Modification Motion. *See* Motion, Ex. 12 at 85-91 (the "Draft Second Amendment"). In the Modification Motion, the Secured Parties explained that "the credit bid purchase price would be reduced by the amount of prepetition outstanding HOA liabilities (approximately $770,535) and tax liabilities (approximately $42,530)." *See id.* ¶ 10.

The Fleeger Family indisputably knew about the possibility of a purchase price adjustment in connection with the outstanding HOA fees. Indeed, in a December 30, 2023 filing, the Fleeger Family acknowledged that "the Secured Parties have . . . agreed to accept a purchase price adjustment." Motion, Ex. 14, ¶ 27 n.5. Moreover, discussions concerning the purchase price adjustment occurred at multiple hearings before the Bankruptcy Court, including at the January 22, 2024 evidentiary hearing that forms the basis for this appeal.[6] In fact, the Fleeger Family admitted an exhibit containing the Draft Second Amendment into evidence at the evidentiary hearing as Fleeger Exhibit 48. *See* Motion, Ex. 16, January 22, 2024 Hearing Tr. at 8:21-25.

---

[6] *Supra* note 3.

Accordingly, it is beyond disingenuous for the Fleeger Family to suggest that it just learned about the Second Amendment from BTB's filing. The Fleeger Family knew about the prospect of the amendment weeks before the evidentiary hearing, and even questioned a witness about this amendment at this hearing. *See* Motion, Ex. 16, Jan. 22, 2024 Hearing Tr. at 80, 86-87. There is no excuse for the Fleeger Family's failure to raise its arguments concerning the purchase price adjustment in its opposition to the Motion. For this reason alone, the Court should disregard the Supplement as an unauthorized and improper filing.

### B. The Fleeger Family Waived Its Conduct-Based Argument by Not Raising it in the Bankruptcy Court.

Even putting aside that its Supplement is procedurally improper, it is firmly established that a party may not challenge a purchaser's good faith under section 363(m) for the first time on appeal. *See e.g.*, *In re Ginther Trs.*, 238 F.3d 686, 689 (5th Cir. 2001) (refusing to consider arguments regarding good faith purchaser status not presented to the bankruptcy court); *In re O'Dwyer*, 611 F. App'x 195, 200 (5th Cir. 2015) ("[a] party may not challenge a purchaser's good faith status under § 363(m) for the first time on appeal"); *see also* Motion at 16 (collecting cases). Just like its original argument that the Secured Parties purchased the Ranch with knowledge of an adverse claim, at no point prior to this untimely Supplement did the Fleeger Family argue that the purchase price adjustment constituted bad faith.

8

As discussed above, the Fleeger Family knew about the purchase price adjustment since November 30, 2023, yet it never argued before the Bankruptcy Court that the adjustment renders the Secured Parties bad faith purchasers. The Fleeger Family had ample opportunity to develop and make this argument, including at the evidentiary hearing where it questioned witnesses concerning the HOA fee dispute and the purchase price adjustment, and even admitted a copy of the draft Second Amendment into the evidentiary record.[7] This argument has been waived.

### C. The Second Amendment and Purchase Price Adjustment Do Not Establish Lack of Good Faith.

Even if not waived, the Fleeger Family's argument is meritless because the purchase price adjustment does not call into question the Secured Parties' good faith. Bad faith under section 363(m) involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *See In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014); *see also In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986) (allegations of manipulation of bankruptcy process to preclude any truly competitive bidding in exchange for lucrative employment offer sufficed to challenge good faith).

---

[7] The unpublished Ninth Circuit BAP case cited by the Fleeger Family shows at most that a good faith inquiry must be remanded to the bankruptcy court if new facts call into question the purchaser's good faith. *In re Zuercher Tr. of 1999*, 2016 WL 721485, at *1 (B.A.P. 9th Cir. Feb. 22, 2016). But here, even if this case applied, no remand would be warranted since the facts (1) are not "new" and (2) do not implicate the Secured Parties' good faith.

The Fleeger Family contends that the Secured Parties acted in bad faith by entering into the Second Amendment without first obtaining approval from the Bankruptcy Court.  This is wrong for several reasons.  First, the Fleeger Family does not own any Ranch parcels and has no interest in whether the HOA fees have been paid.  Their allegations about the HOA fees do not, and cannot, amount to fraud, collusion, or an attempt to take advantage of other bidders, for the simple reason that *the HOA fees have nothing to do with the bidding process*.  Second, the Modification Order expressly permitted the parties to enter into amendments consistent with the Sale Order, which permitted modifications that would not have a "material adverse effect on the Debtors' estates."  *See* Modification Order at 10, ¶ 3; Sale Order ¶ 40.  The Secured Parties' purchase price adjustment, which had been disclosed to the Court at several hearings and in pleadings, did not have a material adverse effect on the estate.  Instead, it benefitted the estate by allowing the sale to close quickly, avoiding additional carrying costs to the estate (approximately $10,000 per day) and an expensive battle with the DIP Lender.

Beyond all this, payment of the HOA fees was always an obligation of the Debtors, even under the Fleeger Family's own Back-Up Bidder Agreement.  *See* Motion, Ex. 11 at 89.  When the Debtors were unable to make those payments because their affiliate DIP lender refused to provide funding, the Secured Parties accepted the proposed purchase price adjustment.  Again, the Fleeger Family's own

10

agreement contemplated a purchase price adjustment to satisfy the Debtors' obligation to pay the HOA fees. *Id.* ("In the event the Association Obligations have not been satisfied by the Closing Date, Purchaser shall be entitled to reduce the Purchase Price by an amount equal to the Association Obligations."). Agreeing to such an adjustment is not bad faith, and the Fleeger Family's arguments to the contrary are spurious.

## CONCLUSION

For the foregoing reasons, the Secured Parties respectfully request that the Court disregard the Supplement or reject its arguments, and enter an order dismissing the appeal with prejudice.

*[Signatures appearing on next page]*

Dated:  May 6, 2024

Respectfully Submitted,

ORRICK, HERRINGTON &
SUTCLIFFE LLP

*/s/ Darrell S. Cafasso*

| | |
|---|---|
| Richard A. Jacobsen* | Ryan Wooten |
| Darrell S. Cafasso* | Texas Bar No. 24075308 |
| Laura Metzger* | S.D. Tex. Bar No. 1259974 |
| David Litterine-Kaufman* | 609 Main Street, 40th Floor |
| Nicholas A. Poli* | Houston, TX 77002 |
| Harry F. Murphy* | Telephone:  (713) 658-6617 |
| Michael Trentin* | Email:  rwooten@orrick.com |
| 51 West 52nd Street | James W. Burke* |
| New York, NY 10019 | 1152 15th Street, N.W. |
| Telephone:  (212) 506-5000 | Washington, D.C. 20005 |
| Email:  rjacobsen@orrick.com | Telephone:  (202) 339-8400 |
| dcafasso@orrick.com | Email:  jburke@orrick.com |
| lmetzger@orrick.com | |
| dlitterinekaufman@orrick.com | |
| npoli@orrick.com | |
| hmurphy@orrick.com | |
| mtrentin@orrick.com | |

*Attorneys for Appellees, Nineteen77 Capital Solutions A LP, Bermudez Mutuari, Ltd., and UBS O'Connor LLC*

*Admitted pro hac vice

12

## CERTIFICATE OF COMPLIANCE

This motion complies with the word limitation in Bankruptcy Rule 8013(f)(3)(A) because this document contains 2,594 words (excluding the parts of the brief exempted by Bankruptcy Rule 8013(a)(2)(C), as counted using the word count of the word-processing system used to prepare the document), and the typeface and style requirements of Bankruptcy Rule 8015(a)(5) and (a)(6).

Dated: May 6, 2024

By: */s/ Darrell S. Cafasso*
Darrell S. Cafasso

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May 2024, a true and correct copy of the foregoing pleading was filed and served via the Court's ECF and notification system to all parties registered to receive electronic notices in this matter.

/s/ *Darrell S. Cafasso*
Darrell S. Cafasso